1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE M. W.,[1] | Case No. 2:19-cv-06908-AFM |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER REVERSING AND REMANDING DECISION OF THE COMMISSIONER** |
| ANDREW SAUL, | |
| Commissioner of Social Security, | |
| Defendant. | |

Plaintiff filed this action seeking review of the Commissioner's final decision denying her application for disability insurance benefits. In accordance with the Court's case management order, the parties have filed briefs addressing the merits of the disputed issues. Defendant filed supplemental authority on June 26, 2020, and Plaintiff filed a response to Defendant's supplemental authority on June 26, 2020. The matter is now ready for decision.

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

**BACKGROUND**

On March 28, 2016, Plaintiff applied for disability insurance benefits, alleging disability since February 28, 2013. Plaintiff's applications were denied initially and on reconsideration. (Administrative Record ["AR"] 70-88.) A hearing took place on February 26, 2018 before an Administrative Law Judge ("ALJ"). Both Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at the hearing. (AR 35-69.)

In a decision dated July 12, 2018, the ALJ found that Plaintiff suffered from the severe impairment of status/post lumbar surgery. (AR 19.) The ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform a range of light work; to lift and/or carry 20 pounds occasionally and 10 pounds frequently; to stand and/or walk 6 hours in an 8-hour workday and sit 6 hours in an 8-hour workday; was restricted from climbing ladders, ropes, or scaffolds; occasionally climb ramps or stairs; could frequently balance; and could occasionally perform all other postural activities. (AR 19.) Relying upon the testimony of the VE, the ALJ found that Plaintiff was capable of performing work existing in significant numbers in the national economy, including the occupations of appointment clerk and receptionist. (AR 22.) Accordingly, the ALJ concluded that Plaintiff was not disabled. (AR 23.)

The Appeals Council subsequently denied Plaintiff's request for review (AR 1-7), rendering the ALJ's decision the final decision of the Commissioner.

**DISPUTED ISSUES**

1.     Whether the ALJ properly evaluated the opinion of Plaintiff's treating physician, Brian S. Grossman, M.D.

2.     Whether the ALJ properly discounted Plaintiff's subjective complaints.

3.     Whether the ALJ was properly appointed.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial

2

evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

### I.  Relevant Medical Evidence

<u>Dr. Grossman</u>

Brian S. Grossman, M.D., performed an initial orthopedic evaluation of Plaintiff on June 26, 2013. (AR 297-304.) Dr. Grossman indicated that he had reviewed Plaintiff's medical records. He opined that Plaintiff is precluded from lifting greater than 10 pounds, sitting longer than 30 minutes at one time, and repetitive bending and stooping. Dr. Grossman ordered an MRI of Plaintiff's lumbar spine. (AR 297-303.)

The August 14, 2013 MRI revealed the following:

At the L3-4 disc space, there is a left lateral distal foraminal extruded disc herniation with a small sequestered fragment of 5 mm which abuts the sensory root ganglion and contribute[s] to a compromise of the left L3 nerve root within the distal foramen. The AP diameter of the sequestered fragment is approximately 3 mm. Additionally, there is suspected proximal left L4 lateral recess stenosis compromise. There is

slight prominence of the nerve root within its intrathecal course. There
is no central canal stenosis.

(AR 295.) Based on the MRI findings, Dr. Grossman recommended anti-
inflammatory medications and additional chiropractic care, and requested
authorization for a lumbar epidural steroid injection, which was denied. (AR 269.)

Dr. Grossman ultimately performed surgery, a left L3-L4 and L4-L5
laminotomy and left L3-L4 discectomy, on Plaintiff on December 12, 2013. (AR
269.) Dr. Grossman evaluated Plaintiff on three subsequent occasions (January 28,
2015, March 11, 2015, and April 29, 2015)[2] and provided opinions about Plaintiff's
functional limitations, before issuing a Maximum Medical Improvement on June 17,
2015. (AR 287, 284, 281, 268.)

In his March 11, 2015 report, Dr. Grossman stated that Plaintiff has "residual
numbness in the left anterior thigh [and] foot and mild numbness in the left calf. This
is worse with sitting, improved with standing and walking." (AR 284.) Plaintiff's
lumbar spine examination revealed decreased light touch sensation of the left anterior
thigh and foot. (AR 284.)

On April 29, 2015, Dr. Grossman's report stated that "[Plaintiff] is able to sit
or walk for approximately one hour before she begins to experience pain in the left
leg." (AR 281.) Plaintiff's neurological examination again revealed decreased light
touch sensation on the left anterior thigh and foot. (AR 281.) Her lumbar spine
examination revealed mildly decreased range of motion "with pain at the limit of her
range." (AR 281.)

On June 17, 2015, Dr. Grossman's report included the following findings: slow
and guarded gait; a lumbar range of motion that is markedly restricted in all planes

---

[2] The Court notes that two of the evaluations were performed by Dr. Grossman's physician
assistant, Shelley Kirby, PA-C. Those evaluations were reviewed, edited, and approved by
Dr. Grossman. (AR 282, 285.) The Court also notes that the record does not include documentation
from an evaluation apparently performed on January 18, 2015. Instead, Dr. Grossman references
the January evaluation in his February 20, 2015 report. (AR 287.)

4

and is painful; a positive seated and supine straight leg raise test on the left, negative on the right. (AR 271.) He rated her impairment as DRE Lumbar Category III, which included a Whole Person Impairment of 13%. (AR 271.) Dr. Grossman explained the rating:

> DRE Lumbar Category III is appropriate when there are significant signs of radiculopathy, or history of herniated disk that correlates with clinical findings, or for individuals who have had surgery for radiculopathy but are now asymptomatic. Based on the evaluation I have performed, this description most accurately categorizes this patient's present impairment.

(AR 271.) Dr. Grossman added a 3% Whole Person Impairment on the basis of Plaintiff's pain interfering with her daily activities. (AR 271.) Dr. Grossman checked boxes to indicate the following: Plaintiff's maximum ability to lift and/or carry is 10 pounds; she can frequently lift and/or carry 0 pounds; occasionally lift and/or carry 10 pounds; she can stand and/or walk a total of less than 2 hours per 8 hour day, no greater than 20 minutes at one time; she can sit a total of less than 6 hours per 8 hour day, no greater than 90 minutes at one time; she is limited to pushing/pulling 10 pounds; she can occasionally balance; she can never climb, stoop, kneel, crouch, crawl, or twist; she can frequently reach, handle, finger, feel, see, hear, and speak. (AR 272-273.) Dr. Grossman further stated: "The patient experiences an increase in symptoms if activities exceed these recommended limitations." (AR 273.) According to Dr. Grossman, in preparing his report, he relied on the entire medical file in his possession. (AR 273.) Because Dr. Grossman did not anticipate a significant change in Plaintiff's clinical status in the foreseeable future, he deemed that she reached Maximal Medical Improvement. (AR 271.)

On February 8, 2016, Dr. Grossman responded to a request to review a Panel Qualified Medical Evaluation report from Dr. Charles Schwartz dated November 3,

2015[3] and to incorporate it in his next periodic report. (AR 263.) Dr. Grossman indicated that since Plaintiff reached Maximum Medical Improvement, he did not anticipate another periodic report and provided a supplemental report instead. (AR 263.) With respect to the report from Dr. Charles Schwartz, Dr. Grossman stated:

> Dr. Schwartz considers [Plaintiff] to have reached Maximum Medical Improvement as of June 17, 2015 based upon my own report. He calculates 13% Whole Person Impairment based upon DRE Lumbar Category III […] He states that she is precluded from repetitive bending, lifting, stooping, and lifting greater than 25 pounds. […]
>
> Dr. Schwartz's conclusions are similar to my own in that he also determines 13% Whole Person Impairment, although I felt that an additional 3% Whole Person Impairment on the basis of pain was indicated due to the significant effect of pain on activities of daily living. We both […] had similar conclusions regarding future medical care and functional capacity.

(AR 263-264.)

Consultative orthopedic examination

The consultative examining physician, Arthur D. Schwartz, M.D.,[4] evaluated Plaintiff on June 26, 2016. (AR 305-308.) Dr. Schwartz reviewed Plaintiff's records and stated her history of present illness, noting that her "back is better but it is still troubling her," and that therapy, epidurals, and exercises help a little but not much. (AR 305.) Plaintiff had a repeat MRI on June 17, 2016, which was still awaiting results. (AR 305.) Physical examination included the following: Plaintiff's lumbar is "somewhat stiff" and she can bend forward to about 60 degrees and bend laterally to about 20 degrees; straight leg raising is negative on the right, positive on the left

---

[3] Dr. Charles Schwartz's November 3, 2015 report is not part of the record.
[4] The consultative examining physician and the qualified medical examiner share a last name. Accordingly, the Court refers to these physicians by their first and last names.

seated at 70 degrees and at 60 degrees supine; muscle strength/muscle bulk and tone are normal throughout her body; Plaintiff has some numbness of the left lower extremity of the L4-5, S1 distribution. (AR 306-307.)

Dr. Schwartz diagnosed Plaintiff with chronic left sciatica since her job injury in 2013 and failed December 2014 back surgery L3-4-5. (AR 307.) His functional assessment provided that Plaintiff's maximum standing/walking and sitting capacities have no limitations; Plaintiff's maximum lifting/carrying/pulling capacity is 20 pounds occasionally and 10 pounds frequently; Plaintiff can frequently climb steps or stairs, occasionally climb ladders, and has no limitations for stooping, crouching, kneeling, and crawling. (AR 308.)

State Agency physicians

State Agency physician, C. Bullard, M.D., completed an initial Disability Determination Explanation on July 22, 2016. (AR 70-79.) The report included a summary of Plaintiff's medical history. (AR 74-75.) Dr. Bullard opined that the medical evidence supports a light RFC with occasional posturals. (AR 75.) Dr. Bullard's RFC assessment provided that Plaintiff can occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds; Plaintiff can stand and/or walk and sit for a total of about 6 hours in an 8-hour workday; Plaintiff can occasionally climb ramps/stairs, ladders/ropes/scaffolds, stoop, kneel, crouch, and crawl; Plaintiff can frequently balance. (AR 76-77.)

On reconsideration, I. Ocrant, M.D., completed a Disability Determination Explanation. (AR 80-88.) The report stated that Plaintiff complained of more frequent pain and episodes of numbness and that Plaintiff does not have any new conditions. (AR 82.) Dr. Ocrant affirmed Dr. Bullard's previous findings. (AR 87.)

**II.    Whether the ALJ properly discounted the opinion of Dr. Grossman.**

**A. Relevant law**

The medical opinion of a claimant's treating physician is entitled to controlling weight so long as it is supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). If a treating or examining physician's medical opinion is uncontradicted, the ALJ may only reject it based on clear and convincing reasons. *Trevizo*, 871 F.3d at 675; *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating or examining physician's opinion is contradicted, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record before rejecting it. *Trevizo*, 871 F.3d at 675; *Ghanim v. Colvin*, 763 F.3d 1154, 1160-1061 (9th Cir. 2014); *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo*, 871 F.3d at 675 (citations and internal quotation marks omitted). Because the opinions of Plaintiff's treating physician (Dr. Grossman) were contradicted by the opinions of the consultative examining physician (AR 305-308) and the State agency physicians (AR 74-79, 85-88), the ALJ was required to provide specific and legitimate reasons for rejecting them.

### B. Analysis

In summarizing Dr. Grossman's medical opinions, the ALJ noted that: Dr. Grossman checked boxes to indicate that Plaintiff could lift and carry 10 pounds and could frequently lift and carry 0 pounds; Dr. Grossman also checked boxes to indicate that Plaintiff could never climb, stoop, kneel, crouch, crawl, or twist; using the American Medical Association ("AMA") guidelines, Dr. Grossman opined that Plaintiff has a 13% Whole Person Impairment, plus 3% on the basis of pain. (AR 21.) In assessing this opinion, the ALJ stated:

> However, the 13% to 16% Whole Person Impairment appears to be close
> to a limitation to light work in Social Security Administration
> terminology. Because of these differences in terminology, I have given
> little weight to the opinion of Dr. Grossman regarding the stooping

preclusion. It is unsupported by medical reasoning, and there are other opinions that appear reasonable […] […] [O]n February 8, 2016, Dr. Grossman favorably discussed an opinion of Dr. Charles Schwartz stating that [Plaintiff] could repetitively lift 25 pounds (citations omitted). […] In a report dating June 26, 2013, Dr. Grossman limited lifting to ten pounds. (citations omitted). […] The later opinions of Dr. Grossman negate this June 2013 report.

(AR 21.)

It appears that the ALJ provided the following reasons for rejecting Dr. Grossman's opinion: (1) Dr. Grossman favorably discussed Dr. Charles Schwartz's opinion "stating that the claimant could repetitively lift 25 pounds," which negated Dr. Grossman's earlier contrary opinion; (2) the AMA terms relied upon by Dr. Grossman "do not translate readily to terms used in Social Security Administration cases"; and (3) Dr. Grossman's "checkmark" opinion precluding Plaintiff from stooping is unsupported by medical reasoning. (AR 21.)

<u>Dr. Grossman's Discussion of Dr. Schwartz's Opinion</u>

"[I]nternal inconsistencies are a valid reason to accord less weight to a medical opinion." *See Salas v. Colvin*, 2016 WL 3457757, at *2 (C.D. Cal. June 22, 2016); *Connett v. Barnhart*, 340 F.3d 871, 874-75 (9th Cir. 2003) (finding that an inconsistency between a treating physician's opinion and his own treatment notes is grounds to discount his opinion); *Gabor v. Barnhart*, 221 F. App'x 548, 550 (9th Cir. 2007) ("The ALJ noted internal inconsistencies in Dr. Moran's report, which provide a further basis for excluding that medical opinion").

Here, the ALJ stated that "Dr. Grossman favorably discussed an opinion of Dr. Charles Schwartz stating that [Plaintiff] could repetitively lift 25 pounds." (AR 21.) The underlying opinion of Dr. Charles Schwartz is not part of the record. Thus, the Court – as the ALJ apparently did – relies upon Dr. Grossman's summary of that opinion. In this regard, Dr. Grossman's February 2016 opinion stated:

1    [Dr. Schwartz] states that [Plaintiff] is precluded from repetitive
2    bending, lifting, stooping, and lifting greater than 25 pounds. [...]

3        Dr. Schwartz's conclusions are similar to my own in that he also
4    determines 13% Whole Person Impairment, although I felt that an
5    additional 3% Whole Person Impairment on the basis of pain was
6    indicated due to the significant effect of pain on activities of daily living.
7    We both [...] had similar conclusions regarding future medical care and
8    *functional capacity.*

9    (AR 263-264 (emphasis added).)

10        The ALJ's decision incorrectly quotes Dr. Grossman's summary of
11   Dr. Schwartz's report as stating that Plaintiff "could *repetitively* lift 25 pounds." (AR
12   21 (emphasis added).) Nevertheless, Dr. Grossman's report does indicate that
13   Plaintiff could lift no greater than or, in other words, up to 25 pounds. (AR 263.)
14   Thus, the ALJ could properly find Dr. Grossman's endorsement of Dr. Schwartz's
15   opinion to be in direct conflict with his previous reports in which Dr. Grossman
16   opined that Plaintiff "is precluded from lifting greater than 10 pounds" (AR 303) and
17   that she could frequently lift 0 pounds. (AR 272.)

18        This inconsistency in Dr. Grossman's opinions is a specific and legitimate
19   reason that supports the ALJ's discounting of his opinion. *Fleming v. Comm'r of Soc.*
20   *Sec. Admin.*, 500 F. App'x 577, 579 (9th Cir. 2012) (holding that since the ALJ found
21   that the opinion of an examining physician was internally inconsistent, "the ALJ
22   provided specific and legitimate reasons supported by substantial evidence in the
23   record for discounting [the physician's] medical opinion").

24        <u>Differences in Terminology</u>

25        An "ALJ may not disregard a physician's medical opinion simply because it
26   was initially elicited in a state workers' compensation proceeding, or because it is
27   couched in the terminology used in such proceedings." *Booth v. Barnhart*, 181
28   F. Supp. 2d 1099, 1105 (C.D. Cal. 2002) (citing *Coria v. Heckler*, 750 F.2d 245, 247-

48 (3rd Cir. 1984)). Rather, the "ALJ must 'translate' terms of art contained in such medical opinions into the corresponding Social Security terminology in order to accurately assess the implications of those opinions for the Social Security disability determination." *Booth*, 181 F. Supp. 2d at 1106.

Here, the ALJ did not properly translate Dr. Grossman's "Whole Person Impairment" rating. The ALJ simply stated, without explanation, that it "appears to be close to a limitation to light work in Social Security Administration terminology." (AR 21.) Although the ALJ was not required to explicitly translate the terms used by Dr. Grossman, he also failed to indicate any recognition of the differences between the AMA terminology and the terminology used by the Social Security Administration. *Id*; *see also Segura v. Colvin*, 2014 WL 3434815, at *2 (C.D. Cal. July 10, 2014) (holding that the ALJ "failed to properly assess the implications of [the treating physician's] workers' compensation findings in Social Security terms" when he found that the physician's "assessment of Plaintiff's 'whole person impairment' was entitled to some weight," but "was not dispositive" of Plaintiff's ability to work.) Therefore, the ALJ improperly relied upon "differences in terminology" as a basis for rejecting Dr. Grossman's opinion.

"Checkmark" Opinion

The Ninth Circuit has held that a treating physician's medical opinion can be rejected when it is brief, conclusory, and unsupported by clinical findings. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). This also applies to medical opinions in the form of a checklist. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (finding that the ALJ properly discounted a medical opinion that was in the form of a checklist, was not supported by objective evidence, "was contradicted by other statements and assessments of [Plaintiff's] medical condition, and was based on [Plaintiff's] subjective descriptions of pain"). However, when a physician's checkmark form opinions are based on significant experience with a claimant and are supported by extensive records, they

are entitled to more weight than an otherwise unsupported and unexplained checkmark form. *See Garrison*, 759 F.3d at 1013.

Here, the ALJ cited a lack of medical reasoning for rejecting Dr. Grossman's findings, but failed to acknowledge Dr. Grossman's approximately five-year-long treating relationship with the Plaintiff. (*See* AR 297, 445 (Plaintiff's initial consultation with Dr. Grossman occurred on June 26, 2013 and her final consultation occurred on February 19, 2018).) Additionally, the ALJ's analysis of Dr. Grossman's opinion fails to recognize that the findings in his June 17, 2015 report are based on the entirety of his treatment relationship with Plaintiff and explicitly take into account Plaintiff's entire medical file. (AR 273.) Accordingly, this was not a valid basis for rejecting Dr. Grossman's opinion.

<u>Failure to consider relevant factors</u>

Plaintiff also relies on *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017), to argue that the ALJ erred by not applying the factors set forth in 20 C.F.R. § 404.1527. In *Trevizo*, the Ninth Circuit discussed the ALJ's obligation to consider a physician's opinion "according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." *Trevizo*, 871 F.3d at 675 (citing 20 C.F.R. § 404.1527(c)(2)-(6)). It held that the ALJ's failure to consider these factors constitutes reversible legal error. *Trevizo*, 871 F.3d at 676. Nevertheless, courts applying *Trevizo* have concluded that it "does not demand a full-blown written analysis of all the [§ 404.1527(c)] factors; it merely requires some indication that the ALJ considered them." *Lisa R. S. H. v. Berryhill*, 2018 WL 3104615, at *5 (C.D. Cal. June 21, 2018) (quoting *Hoffman v. Berryhill*, 2017 WL 3641881, at *4 (S.D. Cal. Aug. 24, 2017), *report and recommendation adopted*, 2017 WL 4844545 (Sept. 14, 2017)); *see also*, *Huddleston v. Berryhill*, 2018 WL 2670588, at *10 (C.D. Cal. May 31, 2018).

The ALJ recognized that Dr. Grossman was Plaintiff's treating physician, reviewed his treating notes and opinion, acknowledged his specialization as an orthopedic surgeon, and relied on the inconsistency of Dr. Grossman's opinion with the record, namely his own opinions. Because the ALJ adequately considered Dr. Grossman's opinion, his failure to explicitly describe and apply each of the regulatory factors in his decision did not constitute legal error.

\*     \*     \*

In sum, the ALJ's decision provided a legally sufficient basis – internal inconsistency –for discounting Dr. Grossman's opinion. Although certain of the other reasons in the decision were not adequate, any error in this regard was harmless in light of the other sufficient reason.

## III. The ALJ's Assessment of Plaintiff's Subjective Symptom Claims

At the February 2018 hearing, Plaintiff testified that her back surgery in December 2014 initially provided improvement of her symptoms. (AR 42-43.) Plaintiff stated that although the surgery helped with the initial severity of the pain, over time her pain has increased. She experiences numbness in her left leg and is often awoken at night from pain. (AR 43.) According to Plaintiff, the severity of her pain at the time of the hearing was "about the same" as before surgery. (AR 43.) Plaintiff said that she experiences continuous pain in her left leg and lower left back. (AR 43-44.) When aggravated, the pain extends down to her left buttock, hip, and groin. (AR 44.) Her pain is always there and intensifies when she is more active. (AR 44.)

Plaintiff also testified that she is not active for consecutive hours at a time. (AR 44.) If she goes to the grocery store, she will not do anything for the following two to three hours. (AR 44.) She cooks something simple about two to three times per week. (AR 45.) She estimated that she could walk about a quarter of a mile in about twenty minutes before needing to rest. (AR 46.) Plaintiff said that she cannot "walk the whole mall anymore." (AR 46.) Standing for longer than ten to fifteen minutes

bothers her. (AR 46.) She can sit for forty-five minutes to an hour before having to get up, at which point she will walk around for about twenty to thirty minutes. (AR 46.)

According to Plaintiff, the heaviest weight she could lift would be about a gallon-sized bottle, which is approximately eight pounds. (AR 45-46.) She stated that she generally restricts lifting to her right arm because lifting with her left arm is more likely to trigger pain. (AR 45.)

Plaintiff treats her pain with epidurals, physical therapy, and pain medication. (AR 52.) She takes about 800 milligrams of ibuprofen per day. (AR 52.)

Plaintiff's husband, daughter, and her daughter's children live with her. (AR 52.) Plaintiff's husband works out of town and is home every other week. (AR 52.) Her daughter has a two-and-a-half-year old daughter that lives with them and two eight-and-a-half-year old daughters that live with them half the time. (AR 53.) Plaintiff said that her two-and-a-half-year old granddaughter is very self-sufficient and mobile. (AR 53.) Plaintiff fixes lunch for her granddaughter and gives her water and snacks throughout the day. (AR 53.) When her eight-and-a-half-year old granddaughters are there, they help Plaintiff in taking care of the younger granddaughter. (AR 53.) Dr. Schwartz's June 2016 report further reflects that Plaintiff reported doing "some cooking and housework and laundry." (AR 305.) Housekeepers come to Plaintiff's house every other week to do the heavier cleaning. (AR 53.)

When describing her most recent job, Plaintiff said the company was bought out and relocated its warehouse services out of state. (AR 48.) The company had completely relocated about a year and a half after Plaintiff left her job there due to her injury. (AR 48.)

**A. Relevant Law**

Where, as here, a claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce pain or other

14

symptoms and the ALJ has not made an affirmative finding of malingering, an ALJ must provide specific, clear and convincing reasons before rejecting a claimant's testimony about the severity of her symptoms. *Trevizo*, 871 F.3d at 678 (citing *Garrison*, 759 F.3d at 1014-1015). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1991) (en banc)).

Factors an ALJ may consider when making such a determination include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, unexplained failure to pursue or follow treatment, and inconsistencies in testimony. *See Ghanim*, 763 F.3d at 1163; *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).

**B. Analysis**

The ALJ discounted Plaintiff's subjective complaints of disabling pain and limitations.  The ALJ's decision sets out several grounds for this determination.

<u>Lack of objective medical evidence</u>

So long as it is not the only reason for doing so, an ALJ permissibly may rely on a lack of objective medical evidence to discount a claimant's allegations of disabling pain or symptoms. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider in his credibility analysis."); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (same).

In the present case, the ALJ summarized Plaintiff's subjective complaints,

including her allegations that she can lift a gallon of liquid, her back pain sometimes awakens her from sleep, after going to the store she will wait two or three hours before preparing a meal, and she can sit for about forty-five minutes to an hour before getting up to walk around. (AR 20.) The ALJ also summarized the medical record, which revealed that Plaintiff's straight left raising test was positive on the left and her muscle strength, bulk, and tone were normal in all extremities. (AR 20.) He concluded that Plaintiff's allegations were supported by the medical evidence and other evidence in the record. (AR 21.)

In light of the medical record set forth in detail above, the ALJ properly relied upon the absence of objective medical support as a factor in his decision to discount Plaintiff's subjective complaints – but this reason by itself is not legally sufficient. *See Burch*, 400 F.3d at 681.

Daily activities

An ALJ may discredit testimony when a claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. *Molina*, 674 F.3d at 1113. In addition, "[e]ngaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim*, 763 F.3d at 1165. Nevertheless, the Ninth Circuit has made clear that "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. "[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). In addition, an ALJ should explain "*which* daily activities conflicted with *which* part of [Plaintiff's] testimony." *See Burrell*, 775 F.3d at 1138.

1    Here, the ALJ noted that Plaintiff "does some cooking, housework and
2    laundry. She shops some. She babysits her granddaughter." (AR 20.) The ALJ
3    emphasized Plaintiff's childcare for a toddler as well as two other children under ten
4    years of age, noting that "[s]ome people perform such childcare responsibilities at
5    substantial gainful activity earning levels." From this, he concluded that Plaintiff's
6    daily activities "are consistent with the level of activity associated with the
7    established residual functional capacity." (AR 21.) The    ALJ    appeared    to
8    predominantly base this conclusion on Plaintiff's childcare activities.

9        In cases where caring for a child has been found sufficient to discount
10   subjective symptoms, courts have pointed to a specific activity – *e.g.*, walking
11   children to school – that conflicted with the claimant's alleged limitations. *See, e.g.,*
12   *Molina*, 674 F.3d at 1113 ("the ALJ could reasonably conclude that Molina's
13   activities, including walking her two grandchildren to and from school, attending
14   church, shopping, and taking walks, undermined her claims that she was incapable
15   of being around people without suffering debilitating panic attacks"); *Rollins v.*
16   *Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (the ALJ properly found that claimant's
17   allegation of totally disabling pain was undermined by her ability to attend to "all of
18   [her two young] children's needs; meals, bathing, emotional, discipline, etc." without
19   assistance from her husband, and her ability to make daily outings to her son's school,
20   soccer games, and taekwondo lessons).

21       Unlike those cases, however, the present record contains little detail about
22   Plaintiff's childcare activities. Plaintiff's testimony regarding her two-and-a-half-
23   year old granddaughter describes her as self-sufficient and mobile, and care is limited
24   to "fixing her lunch, giving her a cup of water, [and] some snacks throughout the
25   day." (AR 53.) Further, Plaintiff stated that her eight-year old granddaughters help
26   her in taking care of the toddler granddaughter. (AR 53.) Given this lack of
27   information regarding the extent and nature of the childcare, the ALJ did not
28   adequately identify what activities conflicted with Plaintiff's testimony, and

17

1  substantial evidence does not support the conclusion the Plaintiff's child-care
2  activities conflicted with her subjective claims. *Burrell*, 775 F.3d at 1138.

3       <u>Additional reasons suggested by the Commissioner</u>

4       The Commissioner urges that the ALJ properly discounted Plaintiff's
5  subjective complaints because "her injury occurred at about the time that her
6  employer gave her notice of her layoff." (ECF No. 18 at 9-10 (citations omitted).)
7  This argument is based upon a sentence in the ALJ's decision: "It appears that
8  [Plaintiff's] injury occurred at about the time the company gave her notice of layoff."
9  (AR 20.) The Commissioner is correct that an ALJ may discount a claimant's
10  credibility based upon a finding that a claimant left her job for reasons unrelated to
11  her disability or disability-causing injury. *See Bruton v. Massanari*, 268 F.3d 824,
12  828 (9th Cir. 1992) (holding that the ALJ properly disregarded Plaintiff's symptom
13  testimony when one reason for doing so was that Plaintiff "left his job because he
14  was laid off, rather than because he was injured"). Here, however, the Court cannot
15  conclude from this single sentence that the ALJ in this case purported to do so.

16       The Commissioner also contends that the ALJ relied upon an affirmative
17  inconsistency between Plaintiff's allegations and the medical evidence. It is true that
18  a contradiction between a claimant's subjective complaints and specific medical
19  evidence may constitute a distinct basis for finding the claimant's allegations lack
20  credibility. *See Sills v. Astrue*, 2013 WL 782076, at *3 (C.D. Cal. Mar. 1, 2013)
21  ("there is an analytical difference between a lack of corroborating medical evidence
22  and a contradiction between subjective claims and existing medical evidence")
23  (citing *Morgan v. Commissioner*, 169 F.3d 595, 599-600 (9th Cir. 1999). An ALJ
24  may properly rely upon a contradiction between a claimant's allegations and the
25  medical evidence in reaching a credibility determination. *See Carmickle v. Comm'r,*
26  *Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the
27  medical record is a sufficient basis for rejecting the claimant's subjective
28  testimony."); *Garcia v. Comm'r Soc. Sec. Admin.*, 498 F. App'x 710, 711 (9th Cir.

2012) (claimant's testimony was properly discounted based on a contradiction between that testimony and his doctor's testimony). But the ALJ's decision in the instant matter does not clearly rely upon a contradiction with the medical evidence – as opposed to a lack of support in the objective medical record. Notably, although the ALJ used the phrase "not entirely inconsistent," he did not cite any medical evidence that he believed affirmatively contradicted a particular subjective complaint. *Cf. Morgan,* 169 F.3d at 599-600 (finding the ALJ provided clear and convincing reasons for rejecting claimant's testimony where the ALJ noted that, "contrary to Morgan's claims of lack of improvement, Dr. Reaves reported that Morgan's mental symptoms improved with the use of medication").

In sum, the ALJ erred in failing to provide specific, clear, and convincing reasons to support his decision to discredit Plaintiff's subjective complaints. In light of the significant functional limitations reflected in Plaintiff's testimony, the Court cannot "confidently conclude that no reasonable ALJ, when fully crediting [Plaintiff's] testimony, could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). Thus, this error was not harmless. *See, e.g., Brown-Hunter*, 806 F.3d at 492 (ALJ's failure adequately to specify reasons for discrediting claimant's testimony "will usually not be harmless").

**IV.    Whether the ALJ was properly appointed.**

Plaintiff argues that the ALJ was not properly appointed under the Appointments Clause of the United States Constitution. Plaintiff relies on *Lucia v. SEC*, 138 S. Ct. 2044 (2018). In *Lucia*, the Supreme Court held that ALJs of the Securities and Exchange Commission are "Officers of the United States" subject to the Appointments Clause in Article II of the United States Constitution. *Id.* at 2055. As the Supreme Court explained, the remedy for one who challenges "the constitutional validity of the appointment of an officer who adjudicates his case" is a new hearing before a new ALJ, even if the ALJ who previously heard the case was

now constitutionally appointed. *Id.* (citation and quotation marks omitted). The Supreme Court also recognized that to obtain relief based on a challenge to the validity of an ALJ's appointment, the challenge must be timely made. *Id.* In *Lucia*, the petitioner's challenge was timely because he "contested the validity of [the ALJ's] appointment before the Commission." *Id.*

Following *Lucia*, the Social Security Administration issued SSR 19-1p: Titles II and XVI: Effect of the Decision in Lucia v. Securities and Exchange Commission (SEC) on Cases Pending at the Appeals Council. SSR 19-1p states:

> The Appeals Council will grant the claimant's request for review in cases where the claimant: (1) timely requests Appeals Council review of an ALJ's decision or dismissal issued before July 16, 2018; and (2) raises before us (either at the Appeals Council level, or previously had raised at the ALJ level) a challenge under the Appointments Clause to the authority of the ALJ who issued the decision or dismissal in the case.

SSR 19-1p, 2019 WL 1324866, at *2 (Mar. 15, 2019).

Significantly, Plaintiff did not challenge the validity of the ALJ's appointment before either the ALJ or the Appeals Council. (AR 35-69, 1-7.) Appointments Clause challenges are non-jurisdictional and may be waived or forfeited if not timely asserted during the administrative proceedings. *See Kabani & Co., Inc. v. SEC*, 733 F. App'x 918, 919 (9th Cir. 2018). District courts in the Ninth Circuit that have concluded the failure to raise the issue during administrative proceedings results in forfeiture. *See, e.g., Ahmed Dawood Ahmed E.S. v. Saul*, 2020 WL 2793678, at *3 (C.D. Cal. May 29, 2020); *Latosha N. v. Saul*, 2020 WL 1853310, at *8 (C.D. Cal. Apr. 13, 2020); *Kathleen S. v. Saul*, 2020 WL 353602, at *3 (S.D. Cal. Jan. 21, 2020); *Hughes v. Berryhill*, 2018 WL 3239835, at *2 n.2 (C.D. Cal. July 2, 2018).

Other circuits have also addressed the impact of *Lucia*, and the Tenth Circuit recently held that a failure to exhaust Appointments Clause challenges before the

Social Security Administration results in waiving such a challenge. *See Carr v. Commissioner, SSA*, __ F.3d __, 2020 WL 3167896 (10th Cir. June 15, 2020). While Plaintiff relies on *Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148 (3rd Cir. 2020), this Court agrees with reasoning of *Carr*, which aligns with decisions from district courts in the Ninth Circuit. Accordingly, Plaintiff may not raise this challenge here, having not raised it during administrative proceedings.

## V.   Remedy

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Indeed, Ninth Circuit case law "precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016) (citations omitted). "The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Dominguez*, 808 F.3d at 407 (citation and internal quotation marks omitted).

Although the Court has found error as discussed above, the record is not fully developed, and factual issues remain outstanding. The issues concerning Plaintiff's alleged disability "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance." *See Brown-Hunter*, 806 F.3d at 496; *see also Treichler*, 775 F.3d at 1101 (remand for award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved") (citation omitted); *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (same where the record does not clearly demonstrate the claimant is disabled within the meaning of the Social

Security Act). Accordingly, the appropriate remedy is a remand for further administrative proceedings.[5]

### ORDER

IT IS THEREFORE ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this opinion.

DATED:  7/8/2020

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE

---

[5]  It is not the Court's intent to limit the scope of the remand.

22